# IN THE COURT OF APPEALS OF IOWA

No. 20-0245
Filed November 4, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**HEATH RICHARD CHURCH,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.


Heath Church appeals his conviction for burglary in the first degree, assault causing bodily injury, and stalking. **AFFIRMED**.


Patrick W. O'Bryan, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.


Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Heath Church appeals his convictions for burglary in the first degree, assault causing bodily injury, and stalking, arguing the district court erred in admitting evidence of his prior bad acts, denying his motion for judgment of acquittal based on insufficient evidence, and excluding certain evidence offered for impeachment. Upon our review, we find no error or abuse of discretion and affirm his conviction.

## I.  Standard of Review

We review the district court's evidentiary rulings for abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013); *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003) (quoting *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001)); *accord State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012). If we find an abuse of discretion, we will only reverse if prejudice is shown. *Buenaventura*, 660 N.W.2d at 50; *State v. Windsor*, 316 N.W.2d 684, 688 (Iowa 1982).

"Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). A jury verdict is binding upon this court and will be upheld unless it is not supported by substantial evidence. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). Substantial evidence is evidence that would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* If evidence raises only suspicion, speculation, or conjecture, it is not substantial. *State v. Howse*, 875 N.W.2d 684,

688 (Iowa 2016). We consider all evidence in the record, not just the evidence supporting guilt. *Tipton*, 897 N.W.2d at 692. We view all relevant evidence in the light most favorable to the State. *Id.*

## II. Facts & Proceedings

Church and M.D. began dating in April 2018, the start of a turbulent relationship. M.D. and Church did not share a residence.

On April 12, 2019, Church appeared outside of M.D.'s apartment and threatened to break her vehicle's windows. M.D. remained in her apartment. Church attempted to enter M.D.'s apartment and threatened to strangle her. M.D. called 911, and law enforcement removed Church from the area.

On June 26, Church appeared outside of M.D.'s apartment with a crowbar. Church entered M.D.'s vehicle and took her insurance card.[1] M.D. called the police to report Church's entry into her vehicle. Church then turned his attention to M.D. and yelled for her to let him into her apartment. M.D. refused, and Church wedged the crowbar into the doorframe, attempting to gain entry to M.D.'s apartment. M.D. pushed against the inside of the door, yelling at Church to leave. Police responded and arrested Church. In relation to the June 26 events, Church pled guilty to burglary of an unoccupied motor vehicle, attempted burglary, and possession of burglar's tools.

On August 25, M.D. ended her relationship with Church. The next day, Church arrived uninvited at M.D.'s apartment and proceeded through her unlocked door. M.D. asked Church what he was doing at her apartment and told him "he

---

[1] Church was paying for M.D.'s insurance at the time.

had no right" to be there. Church refused to leave and sat down on the couch. Out of M.D.'s view, Church began looking through M.D.'s phone.

When M.D. noticed Church looking through her phone, she demanded the return of the device. Church refused and entered a bedroom with the phone. M.D. followed, knocking the phone out of Church's hands and onto the bed. When M.D. reached for her phone, Church put one hand around M.D.'s neck and began strangling her. M.D. yelled and attempted to push Church off her.[2] Church put his other hand over her mouth and nose to prevent her from screaming. M.D. continued to resist Church until she was able to break free and call law enforcement.

M.D. reported to 911 operators that Church had attacked her. While M.D. was on the phone, Church went through her purse. After the 911 call, M.D. attempted to leave the apartment to wait for police. However, Church blocked the door, stating, "[y]ou ruined my life, you stupid bitch." Church then struck M.D. in the back of the neck with his forearm. The blow caused M.D. to fall to the floor and lose grip of her phone. Church, grabbing the phone, exited the apartment. Church entered a friend's apartment in the same building, located one floor directly below M.D.'s apartment.

Officers Chris Colbert and Jacob Kerr responded to M.D.'s call. The officers spoke with M.D., who was visibly upset. Officer Colbert testified that in speaking with M.D., he observed fingermarks on her neck. One floor below M.D.'s apartment, the officers located Church, still in possession of M.D.'s cell phone.

---

[2] M.D. is five foot, three inches tall and weighs 120 pounds. Church weighed "at least 175 pounds."

Officer Colbert testified that he observed scratch marks on Church's face. Officers placed Church in their car and returned to speak with M.D. The officers asked what she would like them to do. She stated that she "wouldn't press charges as long as [she] got [her] phone back." Church was not arrested but told to leave the area. Officer Kerr testified that he believed a crime had occurred; however, he "had to decipher if it was a domestic assault or a simple assault as well as burglary."

Church's vehicle remained at M.D.'s apartment. Afraid that Church may try to enter her apartment when he returned, M.D. barricaded her front door by wedging a chair under the doorknob. Later that day, Church returned to M.D.'s apartment and tried to enter. M.D. again called 911. Officers responded, and Church was again instructed to leave.

On August 31, in an attempt to reconcile their relationship after the events of August 26, Church sent M.D. a text message which read, "Listen, I apologize for putting my hands on you, I know I shouldn't have done that. Things got out of hand, I just overreacted."

On September 29, Church entered M.D.'s apartment, again, uninvited. Church claimed to be looking for something and began overturning items and searching the apartment. M.D. asked Church to leave several times, but he refused. M.D. called police, but Church left before law enforcement arrived.

An arrest warrant issued on October 14, based on a criminal complaint filed October 11. A trial information was filed on October 25, charging Church with the crimes of burglary in the first degree, in violation of Iowa Code section 713.3 (2019) (count I); willful injury, in violation of section 708.4(2) (count II); and stalking, in

violation of section 708.11(3)(c) (count III). Following trial, a jury found Church guilty as charged as to count I and count III and found him guilty of the lesser included offense of assault causing bodily injury, in violation of section 708.2(2), in count II. The trial court sentenced Church to an indeterminate twenty-five-year term on the felony conviction, a two-year term on the aggravated misdemeanor conviction, and a one-year term on the serious misdemeanor conviction, to run concurrently.[3]

On appeal, Church argues the district court erred in permitting evidence of his prior bad acts, the evidence was insufficient to support his burglary conviction, and the district court abused its discretion in excluding certain impeachment evidence.

## III. Discussion

### A. Prior-bad-acts evidence

First, Church argues the district abused its discretion in permitting M.D. to testify about Church's conduct on June 26, arguing it was impermissible prior-bad-acts evidence. The State, in turn, argues Church has not preserved this issue for appeal because he stipulated to this testimony at trial. Through a motion in limine, Church requested to exclude "[a]ny evidence of the [d]efendant's criminal history or prior bad acts." At hearing on the motion, the State asserted that to support the stalking charge, it intended to have M.D. testify about the events of June 26 and sought to introduce Church's guilty plea stemming from that incident. Church

---

[3] The convictions were ordered to run consecutively with AGCR329014, involving the June 26 incident, for a total period of incarceration not to exceed forty years.

objected to introduction of the guilty plea, arguing the risk of unfair prejudice outweighed its probative value.

However, Church also acknowledged the events of June 26 were relevant to support the stalking charge and agreed that M.D. should be allowed to testify about her observations and feelings from that day. When asked whether M.D. should be allowed to say Church was arrested, charged, and pled guilty, Church resisted but also requested that if the court were to permit such testimony, it be limited to "[Church] was actually taken away by the police. They handcuffed him and took him away." The district court excluded the guilty plea but permitted M.D. to testify about the events of June 26. At trial, M.D. testified about her observations on June 26 and how those events made her feel. At the conclusion of her testimony, she was asked, "Was the defendant taken into custody that day?" M.D. responded, "Yes." Church did not object.

"Generally, the district court's ruling on a motion in limine is not subject to appellate review because the error, if any, occurs when the evidence is offered at trial and is either admitted or refused." *See Wailes v. Hy–Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014). "Thus, 'error claimed in a court's ruling on a motion in limine is waived unless' the error is preserved at trial when the evidence is offered." *See id.* (quoting *State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006)). "There is an exception to this general rule, however. . . . Where the district court's ruling on a motion in limine is unequivocal, 'the decision on the motion has the effect of an evidentiary ruling' and thus preserves the issue for appellate review." *Id.* (quoting *State v. Tangie*, 616 N.W.2d 564, 569 (Iowa 2000)). We find the district court's ruling here was unequivocal. However based on the concessions made

during the limine hearing, we conclude error was not preserved. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999); *State v. Hall*, 740 N.W.2d 200, 202 (Iowa Ct. App. 2007) (noting a party "may not allege error on an issue to which he acquiesced").

While we find the issue was not preserved, we choose to address the prior-bad-acts issue as if error was preserved. Iowa Rule of Evidence 5.404(b) is an exclusionary rule of evidence that governs the admissibility of evidence of a crime, wrong, or other act. *State v. Sullivan*, 679 N.W.2d 19, 24 (Iowa 2004). The rule states that such evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but may "be admissible for other purposes." Iowa R. Evid. 5.404(b). Therefore, while evidence of a crime, wrong, or other act may not be used to show the defendant has a criminal disposition and is, therefore, more likely to have committed the crime in question, such evidence "is admissible if it is probative of some fact or element in issue." *State v. Nelson*, 791 N.W.2d 414, 425 (Iowa 2010).

"The important question is whether the disputed evidence is 'relevant and material to some legitimate issue other than a general propensity to commit wrongful acts.'" *State v. Mitchell*, 633 N.W.2d 295, 298 (Iowa 2001) (citation omitted). If a non-character basis exists for admitting the evidence, and the district court finds it relevant to a material issue, it may be admitted if its probative value is not substantially outweighed by the risk of unfair prejudice. *See Nelson*, 791 N.W.2d 414 at 425.

Here Church's stalking charge required the State prove a course of conduct by Church towards M.D. that would make a reasonable person fear bodily injury or death. *See* Iowa Code § 708.11(3)(c). M.D.'s observations of Church and feelings on June 26 were relevant at a minimum to Church's stalking charge. The evidence was admissible so long as the risk of unfair prejudice did not substantially outweigh its probative value.

The district court took appropriate measures to limit the prejudicial effect of the evidence. M.D.'s testimony was constrained to her observations of the events of June 26. The defendant stipulated to such testimony. M.D.'s testimony did not include any mention of burglary or Church being arrested, charged, or pleading guilty. Although he argues that the phrase "taken into custody" was prejudicial, Church stipulated M.D. could testify Church was "taken away by the police." No mention was made of an arrest or conviction for the June 26 matter by other witnesses.[4] Church's subsequent guilty plea concerning those events was excluded from evidence. The evidence presented of Church's prior bad acts was relevant to support his stalking charge, and its probative value was not substantially outweighed by the risk of unfair prejudice. We find no abuse of discretion.

### B. Sufficiency of the evidence to support burglary conviction

Church argues the district court erred in denying his motion for judgment of acquittal because there is insufficient evidence to support his conviction for burglary in the first degree.

---

[4] Counsel for Church told the jury in closing arguments that his client "was arrested" following the June 26 event.

The jury found Church guilty of burglary in the first degree. Iowa Code section 713.1 provides that a "[a]ny person, having the intent to commit a felony, assault or theft therein, . . . enters an occupied structure, . . . not being open to the public, or who remains therein . . . after the person's right, license or privilege to be there has expired. . . commits burglary." The statute has two essential elements, requiring the State to prove beyond a reasonable doubt (1) the defendant's unlawful presence in or breaking of an occupied structure and (2) the defendant's intent to commit a felony, assault, or theft in the structure. *State v. Walker*, 600 N.W.2d 606, 608 (Iowa 1999). Church does not dispute that M.D.'s apartment qualifies as an "occupied structure" for the purposes of the burglary statute.

We find sufficient evidence was presented to prove Church's unlawful presence in M.D.'s apartment. "A defendant's presence is unlawful under the statute if (1) the defendant enters without any 'right, license or privilege to do so,' or (2) the defendant remains in the structure after the defendant's 'right, license or privilege to be there has expired.'" *Id.* (quoting Iowa Code § 713.1). M.D. testified that Church entered her apartment uninvited. She asked him to leave several times and told him he "had no right to be here." Church refused and remained in the apartment. After their altercation in the bedroom, M.D. called 911 and requested police respond and remove Church. Substantial evidence exists in the record to support the jury's finding that Church unlawfully entered or remained in M.D.'s apartment. *See id.* (holding that victim's actions are sufficient proof to determine whether defendant's presence was lawful).

Additionally, sufficient evidence was presented for the jury to find that Church possessed the specific intent to commit assault or theft. The necessary intent may be found when the defendant enters the occupied structure or "during the time [defendant] unlawfully remains on the premises." *Id.* at 609. "[T]he element of intent in burglary is seldom susceptible to proof by direct evidence. Proof of intent will usually be a matter of circumstantial evidence and inferences drawn therefrom." *State v. Olson*, 373 N.W.2d 135, 136 (Iowa 1985) (internal citation omitted).

M.D. testified that while in the apartment, Church took her phone and refused to return it. She testified after she knocked the phone out of Church's hands, he strangled her and struck her, causing her to fall to the ground. She lost grip of her phone, and Church picked it up and left the apartment. Police later found Church in a neighbor's apartment in possession of M.D.'s phone. Officer Colbert agreed that he observed fingermarks on M.D.'s neck that were "consistent with a person being choked." Finally, Church sent M.D. a text message apologizing for "putting my hands on you." When viewing the evidence in the light most favorable to the State, we find substantial evidence supports the jury's finding that Church committed burglary in the first degree. We do not disturb the jury's finding.

### C.     Exclusion of impeachment evidence

Finally, Church argues the district court abused its discretion when it excluded a text message offered to impeachment M.D.'s testimony.

On cross-examination, the following line of questioning occurred between M.D. and Church's trial counsel:

Q. Now, even as recently as a couple of days ago, you learned that [Church] was talking to women while at the jail; right? A. Yes.
Q. And that was upsetting to you, wasn't it? A. No.
Q. You inquired as to—you wanted to know the names of the women that he was talking to; isn't that correct? A. No.

Church then sought to read a text message M.D. had sent to a friend the day before her testimony. The message read, "The prosecutor told me [Church is] still manipulating you over the phone, and there are other girls, too. One in particular, I guess, that he's selling her a big dream. I am going to get him to tell me her name after trial tomorrow." The State objected to introduction of the message.

Upon the objection, the court removed the jury and heard arguments from the parties. Church argued he should be permitted to impeach M.D. with the message as a prior inconsistent statement. The State argued that introduction was improper because the message was not clearly inconsistent with M.D.'s prior statement.[5] Additionally, the State argued the question of whether M.D. was upset about Church talking to other women was not relevant to the facts of consequence in the case. Church responded that the message was relevant to the stalking charge because it showed M.D. still had hopes for a relationship with Church.

After considering the parties' arguments, the district court excluded the message. The court found it was not proper impeachment as the text message was not inconsistent with M.D.'s testimony. Additionally, the court found the message was irrelevant, noting the message was sent during trial on January 14, 2020, but that, "The charged offense happened up through September 29[, 2019],

---

[5] The State noted that M.D.'s statement that she was going to ask for the woman's name came after her discussing how Church is still being manipulative towards women and argued it is just as likely that M.D. is seeking the name to warn others about Church rather than because she is jealous as Church suggested.

and the question is . . . whether the course of conduct up through September 29th was directed at [M.D.]"

We find no abuse of discretion in the district court's decision. Under Iowa Rule of Evidence 5.613, if after proper foundation and being given an opportunity to explain or deny the statement, a witness denies or fails to remember making a prior statement, extrinsic evidence of the statement is admissible for impeachment purposes. *State v. Berry*, 549 N.W.2d 316, 318–19 (Iowa Ct. App. 1996). However, "matters upon which impeachment is attempted must be relevant to some issue in the case." *State v. Wolfe*, 316 N.W.2d 420, 422 (Iowa Ct. App. 1981). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and [t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401.

We agree with the district court's determination the text message was not inconsistent with M.D.'s testimony and not relevant. Evidence indicating M.D. sought a relationship with Church during the time period involved with the stalking charge may have been relevant to the case. However, the message at issue was sent during trial, months after the time period for which the stalking was alleged. As the message was not directly relevant to facts of consequence in the case, we find no abuse of discretion.

## IV. Conclusion

We find the district court did not abuse its discretion in permitting evidence of Church's prior bad acts through M.D.'s testimony, the record contains substantial evidence to support Church's conviction of burglary in the first degree,

and the district court acted within its discretion in excluding evidence offered to impeach.  Accordingly, we affirm.

**AFFIRMED.**